## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW J. GRANT,           )
      Petitioner,          )     **Civil Action No. 13-621 Erie**
                             )     **Criminal Action No. 2:11-192**
                             )
      v.                  )     **Senior District Judge Maurice B. Cohill**
                             )
**UNITED STATES OF AMERICA**           )
      **Respondent.**          )

## OPINION

Pending before the Court is Petitioner, Matthew J. Grant's (hereinafter "Petitioner" or "Grant") *pro se* Motion to Vacate under 28 U.S.C. § 2255 [ECF No. 30] filed on May 3, 2013. In his Petition, Grant asserts that he should be resentenced due to the fact that his attorney, John B. Cermak ("Cermak") made errors in his representation of Petitioner thus causing Grant to be the subject of Ineffective Assistance of Counsel.

### I. Facts

Matthew J. Grant was the subject of an August 23, 2011, three-count indictment where the grand jury charges were as follows: (1) Distribution and Possession with intent to Distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack a Schedule II controlled substance under 21 U.S.C. 841(a)(1) and 841(b)(1)(A)(iii); (2) Distribution and Possession with intent to Distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack a Schedule II controlled substance under 21 U.S.C. 841(a)(1) and 841(b)(1)(A)(iii); and (3) Distribution and Possession with intent to Distribute less than 5 grams

1

of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack a Schedule II controlled substance under 21 U.S.C. 841(a)(1) and 841(b)(1)(C) [ECF No. 1]. On October 11, 2011, at his arraignment, Grant pleaded not guilty as to Counts 1, 2, and 3 [ECF No. 12]. On November 14, 2011 Grant plead guilty to Count 2 of the indictment at a Change of Plea hearing and submitted his signed plea agreement to the Court [ECF No. 18].

On March 20, 2012 Grant was sentenced to imprisonment for 60 months followed by a term of supervised release of 4 years and Counts 1 and 3 were dismissed [ECF No. 26]. This sentence was according to a statutory mandate for this type of crime and was within the guideline range.

Grant filed his Motion to Vacate under 28 U.S.C. § 2255 [ECF No. 30] on May 3, 2013, well beyond the 14 day deadline given during his plea hearing. More specifically, Grant claims that Cermak, among other things, should have filed objections to the presentence report, which calculated Petitioner to receive a 2-point enhancement under U.S.S.G. § 2D1.1(b)(1) in sentence for possessing a weapon in the commission of a crime. This enhancement rendered Petitioner ineligible to receive the 12-month sentence reduction for successful completion of the Bureau of Prisons' Residential Drug Abuse Program. Further, Petitioner claims that Cermak should have filed a direct appeal in a timely manner. [Petitioner's Motion to Vacate, ECF No. 30]. Other less specific claims in Petitioner's Motion were that Cermak did not investigate the case or communicate with Petitioner adequately.

The Government responds asserting that Grant's Motion should be dismissed on the following grounds: (1) the Motion was untimely filed; and (2) Grant knowingly and voluntarily waived his right to file a Motion to Vacate under 28 U.S.C. § 2255 both in a signed plea

agreement and when questioned in open court at the Change of Plea hearing. [Government's Response to Movant's Motion for Collateral Relief, ECF No. 36 at 1]. The Government argued only these procedural issues in its Response and reserved the right to argue substantive issues should the Court deem it necessary.

## II.  **Standard of Review**

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. U.S. v. Cannistraro, 734 F.Supp 1110, 1119 (D. N.J. 1989), aff'd 919 F.2d 137 (3d. Cir. 1990), cert den'd 500 U.S. 916 (1991). Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . " 28 U.S.C. § 2255(a). Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." U.S. v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997) (citing Hill v. U.S., 368 U.S. 424, 428 (1962)).

The Court must consider the motion together with all the files, records, transcripts and correspondence relating to the judgment under attack. See 28 U.S.C. § 2255, Rule 4(b) of the Rules Governing Section 2255 Proceedings. A district court considering a § 2255 motion "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record," U.S. v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Virgin Islands

v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)), and a court "abuses its discretion if it fails to hold and evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." Booth, 432 F.3d at 546 (citing U.S. v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005). However, the final disposition of a § 2255 motion lies with the discretion of the trial judge, see Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), and a district court may summarily dismiss a § 2255 motion where the motion, files, and records "show conclusively that the movant is not entitled to relief." U.S. v. Mason, 2008 WL 938784, 1 (E.D. Pa. 2008) (citing Forte, 865 F.2d at 62).

"Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal." U.S. v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993) (internal quotations omitted). Moreover, "if a petitioner has failed to raise an objection at the time of trial and has also failed to raise the issue on direct appeal, then collateral review of that claim is procedurally barred unless the petitioner is able to show 'cause' excusing his procedural default and 'actual prejudice' resulting from the alleged error or violation." Henry v. U.S., 913 F.Supp. 334, 335 (M.D. Pa. 1996), aff'd 96 F.3d 1435 (3d Cir. 1996); see also U.S. v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) (holding that the "cause and prejudice" standard set forth in U.S. v. Frady, 456 U.S. 152 (1982) "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed"); Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that an "ineffectiveness" claim can be brought in a collateral proceeding under § 2255 regardless of whether the same issue could have been addressed on direct appeal); DeRewal, 10 F.3d at 104. Finally, the collateral remedy available to prisoners under § 2255 "does not encompass all claimed errors in conviction and sentencing."

4

United States v. Addonizio, 442 U.S. 178, 185 (1979). "The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice'." Id. (quoting Hill, 368 U.S. at 428).

## I.   **Legal Analysis**

### A.   **Knowing and Voluntary Waiver.**

As an initial matter, on pages 13-17 of the transcript [ECF No. 38] of the Change of Plea hearing, the Government provides a recitation of the terms of the Plea Agreement signed by Petitioner. More specifically, on page 14 of the transcript the Government recites Grant's waiver of appellate rights:

> Mr. Grant waives the right to take a direct appeal from his conviction or sentence with the following exceptions. First being, if the government appeals, then Mr. Grant may take a direct appeal.
> The second being, if the sentence either exceeds the applicable statutory limits set forth in the United States Code or the sentence unreasonably exceeds the Guideline range, then Mr. Grant may take a direct appeal.
> Mr. Grant also further waives the right to file a 2255 motion attacking his conviction or sentence.
> Id. at 14-15.

At the end of the recitation of the plea agreement Mr. Grant was asked by the Court if the facts recited were consistent with his understanding. Grant responded, "Yes, sir." Id. at 18. The Court then emphasized, "Giving up the appellate rights, that's a very important thing you're giving up there in return for what the government's offering, too, but you understand all that?" Grant responded, "Yes, sir." Id.

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." U.S. v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001)

(<u>citing</u> <u>U.S. v. Mezzanatto</u>, 513 U.S. 196, 201 (1995)). Such waivers are enforceable "provided

that they are entered into knowingly and voluntarily and their enforcement does not work a

miscarriage of justice." <u>U.S. v. Mabry</u>, 536 F.3d 231, 237 (3d. Cir. 2008), <u>cert. den'd</u>, 129 S.Ct.

2789 (2009) (<u>citing</u> <u>Khattak</u>, 273 F.3d at 561).

A court has "an independent obligation to conduct an evaluation of the validity of a collateral

waiver." <u>Mabry</u>, 536 F.3d at 238. Specifically, we must examine (1) the "knowing and

voluntary nature" of the waiver, based on what occurred and what the defendant contends, and

(2) whether the enforcement of the waiver would work a "miscarriage of justice." <u>Id</u>. at 237.

"Whereas a defendant bears the burden of presenting an argument that would render his waiver

unknowing or involuntary, a court has an affirmative duty both to examine the knowing and

voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of

justice, based on the record evidence before it." <u>Id</u>. at 237-38 (<u>citing</u> <u>Khattak</u>, 273 F. 3d at 563).

With regard to whether the Petitioner's waiver of his right to file a motion to vacate sentence,

under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other

collateral proceeding attacking his conviction or sentence was knowing and voluntary, we must,

at a minimum, "[review] the terms of the plea agreement and change-of-plea colloquy and

address their sufficiency." <u>Mabry</u>, 536 F.3d at 239.

The dialogue which occurred during the change of plea hearing indicates that Petitioner knew

what collateral appeal rights he was waiving and that he did so voluntarily. As further support

that Grant knew and understood the proceedings and the rights he was giving up the Court asked

a series of questions to determine Grant's competency with regard to his plea: The Court asked

if Grant was under the influence of any drug, medicine, narcotic or alcohol. Grant responded,

"No, sir." Grant was asked, "Do you clearly understand exactly what's happening here and now?" To which Grant responded, "Yes, sir." Defense attorney and the attorney for the Government agreed that the Defendant was competent to plead and the Court determined Grant competent to plead. [ECF No. 38, p. 4].

It should be noted that during its recitation of the Plea Agreement during the change of plea hearing, the Government stated the following: "In this particular case, Mr. Grant and the government agree that the maximum penalty or the penalty that may be imposed for a conviction under this statute is a term of imprisonment of not less than five years . . ." Id. at 16.

Finally, of important note is the Court asked Grant if he has had ample opportunity to discuss his case with Cermak. Grant responded, "Yes, sir." Id. at 5. The Court asked Grant if he was satisfied with the job Cermak had done for him to which Grant responded, "Yes, sir." Id. Grant signed a change of plea endorsement at the hearing to which Cermak countersigned and the Court accepted Grant's plea of guilty to Count 2 of the indictment.

It is evident from the transcript of the change of plea hearing that Grant understood the proceeding, had the ability to question things he didn't understand, accepted the facts of the case as presented by the Government, said he understood that the Court had the discretion to sentence him as it saw fit, id. at 19, understood that the crime to which he was pleading carried a mandatory 5-year minimum sentence, and he never indicated that he was unhappy with his counsel's advice. It is the Court's conclusion that Petitioner had a complete understanding of his plea agreement and Petitioner's waiver of his right to bring a collateral appeal was knowing and voluntary. It is here that the Government suggests our legal analysis of the case should terminate and the Court should deny Petitioner's Motion to vacate. However, the Court must determine if

there would be a miscarriage of justice should the Court dismiss the Petitioner's Motion based on his waiver of appellate rights.

### B. Miscarriage of Justice.

The next step in our analysis is to determine whether enforcement of the waiver "would work a miscarriage of justice in this case." Mabry, 536 F.3d at 239. In so considering, a court is to use a "common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver. . . " Id. at 242-43. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. Id. The United States Court of Appeals for the Third Circuit has "endorsed the methodology of the Court of Appeals for the First Circuit," and instructed that we should consider "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result . . ." Id. at 242-43 (quoting U.S. v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001)).

In his Motion, Grant asserts that Cermack should have filed objections to the presentence report, which calculated Petitioner to receive a 2-point enhancement under U.S.S.G. § 2D1.1(b)(1) in sentence for possessing a weapon in the commission of a crime. This enhancement rendered Petitioner ineligible to receive the 12-month sentence reduction for successful completion of the Bureau of Prisons' Residential Drug Abuse Program. Further, Petitioner claims that Cermak should have filed a direct appeal in a timely manner and that Cermak did not investigate the case or communicate with Petitioner adequately. [Petitioner's

Motion to Vacate, ECF No. 30].

The Court will address Grant's claims using the guidance provided by the court in Strickland v. Washington, 466 U.S. 668 (1994). Under the first prong of Strickland, Grant must show that counsel's representation "fell below an objective standard of reasonableness." United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002) (citing Strickland, 466 U.S. at 688). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. See Strickland, 466 U.S. at 687-88. However, there is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689. To establish Strickland's second prong, Grant must show that counsel's deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court does not believe that Attorney Cermak's representation fell below a reasonable standard, nor do we believe that Cermak's representation of Grant prejudiced him in any way.

With regard to Grant's assertion that Cermak should have taken a timely direct appeal and that by not doing so Cermak fell below the reasonableness standard, we disagree. As stated above, it is evident that Grant waived his ability to take a direct appeal except in very limited circumstances. Those limited circumstances, as recited at the Plea Hearing, are: If the Government appeals, which it did not, and if the sentence either exceeds the applicable statutory limits set forth in the United States Code or unreasonably exceeds the Guideline range, which it did not. Therefore, Cermak acted as a reasonable attorney would in that situation by not filing a

9

direct appeal and no prejudice was caused to Petitioner as the appeal would have denied based on his knowing and valid waiver of appellate rights.

Grant made additional claims that Cermak did not investigate the case properly nor did he communicate with Grant adequately. "My attorney, John B. Cermak, failed to conduct an investigation of the facts in my case and failed to prepare in any way for my sentencing hearing. He had no contact with me from 11/14/2011 to 3/20/2012. He did not review or otherwise provide me with a copy of the Pre-Sentence Investigation Report. This failure to prepare and lack of communication was not part of any sound strategy with respect to my sentencing." [Petitioner's Motion to Vacate, ECF No. 30, p. 8]. Grant claims that Cermak's failure to advise Grant properly about the Pre-Sentence Investigation report caused him to be unknowing of the two point enhancement under USSG § 2D1.1(b)(1) for possession of a dangerous weapon, including a firearm increased the base offense level by 2 points, which caused Grant to be ineligible to receive a 12 month reduction in sentenced offered by the Bureau of Prisons for completion of the Residential Drug Abuse Program. Grant further states that the enhancement in base offense level was "clearly improbable" that the weapon in question was related to the offense. Id. at 9.

During its recitation of the Plea Agreement at the change of plea hearing, the Government read aloud for the record the facts as related to Grant's subsequent sentencing. At no time did Grant object to the facts as stated or the sentencing range as proposed. The Government stated the following: "In this particular case, Mr. Grant and the government agree that the maximum penalty or the penalty that may be imposed for a conviction under this statute is a term of imprisonment of not less than five years . . ." [ECF No. 38, p. 16] Further, the Government

10

recited a recitation of the facts of the case as they would be presented if the case went to trial.

"And then in Count Three, we bought, on December 10, 2009, using a [confidential informant] CI, the State Police and DEA met Mr. Grant at a garage located at 818 Second Avenue, Beaver Falls, where we purchased a smaller amount, 1.2 grams of crack. But at that time he also sold us two shotguns, a Mossberg .12 gauge, which was sawed off, and then another [sic] shotgun, which was not sawed off. It was regular [sic] length. We didn't charge that sawed-off shotgun, Your Honor, but we took possession of it." Id. at 22. The Court then asked, "Is that a fair statement of what happened there, Mr. Grant?" Grant replied, "Yes, sir." Id. The Third Circuit has held that the failure to object to the factual description of convictions provided in the Pre-Sentence Report amounts to an admission of those facts. United States v. Siegal, 477 F.3d 87, 93-94 (3d Cir. 2007); United States v. Garcia, 544 F.2d 681, 684 (3d Cr. 1976) (failure to request an evidentiary hearing on hearsay information in presentence report waives defendant's objection to sentencing court's reliance on such hearsay). Based on the facts the Government presented and Grant's open acknowledgment as those facts as true, this Court does not believe an investigation of the facts by Cermak was warranted. In hindsight, because a Petitioner is denied certain privileges in prison, may not argue the facts he previously agreed to in open court, under oath, as faulty. Grant was given sufficient opportunity to challenge his proposed sentence both at the Change of Plea hearing and at the Sentencing Hearing as he was fully aware of the facts of the case and aware of the potential sentencing range for his charged offense.

Finally, it is important to note that even if the 2 point enhancement for possession of a firearm were removed from the base offense level and the total offense level was decreased from 29 to 27, Grant's sentence would not have changed. Grant was sentenced to the 5-year statutory

minimum for the offense and the guideline range was not a factor in the sentencing. In fact, Grant could have suffered a sentence much more substantial than 5 years imprisonment had the Court not considered the Fair Sentencing Act's effect on crack offenses. Therefore, Grant suffered no prejudice in his ultimate imprisonment sentence and the fact that he was not eligible for the 12-month reduction was a result of the stated facts of the case to which he agreed. Thus, it is the Court's determination that Attorney Cermak acted in a reasonably prudent fashion when representing Grant in his plea of guilty and his sentencing.

## II.    Certificate of Appealability

The remaining issue before this Court is whether a certificate of appealability ("COA") should be issued with respect to the Petitioner's § 2255 motion. A court should issue a COA where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). We find that jurists of reason would not find our assessment of Petitioner's claims, constitutional or otherwise, to be debatable or wrong. Therefore, this Court will deny certificate of appealability.

## III.   Conclusion

This Court having held, for the reasons set forth above, that Petitioner knowingly and voluntarily waived his right to file a collateral appeal and that enforcement of said waiver would not work a miscarriage of justice in this case, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 83, as amended ECF No. 89] is DENIED. Moreover, a Certificate of Appealability will not be issued

with respect to this Motion.  An appropriate Order will follow.


August 5, 2013


                                        *Maurice B. Cohill, Jr.*
                                        Maurice B. Cohill, Jr.
                                        Senior United States District Court Judge
                                        Western District of Pennsylvania

cc:    Matthew J. Grant
       33186068
       P.O. box 8000
       Bradford, PA  16701

13